**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 17-CR-00332** |
| | * | |
| **VERSUS** | * | **JUDGE DRELL** |
| | * | |
| **DUSTIN RAY SPEARS SR** | * | **MAGISTRATE PEREZ-MONTES** |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The defendant, an inmate currently incarcerated at FCI Ashland, Kentucky, seeks compassionate release based on an assertion that hypertension and an unspecified mild chronic breathing problem, medical conditions not identified as CDC risk factors and not rising to the severity level identified by the CDC as a risk factor, make him particularly vulnerable to becoming seriously ill from COVID-19 should he contract the disease in prison. Because the defendant has not established an "extraordinary and compelling reason" for release as that term is defined for purposes of 18 U.S.C. § 3592(c)(1)(A), and because he has not demonstrated that he is not a danger to the safety of any other person or to the community, and or that his release is consistent with the 18 U.S.C. § 3553(a) factors, his motion should be denied.

**RELEVANT BACKGROUND**

On December 14, 2017, the defendant was indicted for using a facility in interstate commerce to entice a minor to engage in criminal sexual activity, traveling in interstate commerce to have sex with a minor, production of child pornography,

1

and multiple counts of receipt of child pornography. On June 13, 2017, the defendant pled guilty to one count of receiving child pornography and was sentenced to 97 months in prison followed by 10 years supervised release.

The facts leading to the defendant's indictment and conviction are as follows. The defendant, a 27 year old male, while in Athens, Tennessee, began communicating with a 15 year old minor female, living in Louisiana, on the Chathour website. Thereafter, the defendant continued his communication with and exploitation of the victim using both Skype and e-mail. He also sent the minor victim a cellular phone to facilitate further secret communication. In e-mail communications, the defendant ask the minor female to send him sexually explicit images. The victim sent numerous sexually explicit images of herself to the defendant at his request. The defendant then traveled from Tennessee to Louisiana where the defendant secretly met the victim and engaged in sexual intercourse with her.

On June 20, 2020, the defendant submitted a written request for relief through the BOP administrative changes, and thereafter on June 23, 2020, a written denial of that request was issued.

The defendant in support of this motion for compassionate release asserts that he and his family suffer from high blood pressure and a mild form of chronic breathing problems. The defendant submits no medical evidence in support of this claim. The defendant's current release date is November 7, 2024, which is just 3 years of an 8 year sentence.

## LAW AND ARGUMENT

### 1.  The defendant is not entitled to compassionate release, so his motion should be denied.

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (cleaned up). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements.  Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*   In this case, the

defendant exhausted his administrative remedies by filing a request for relief through the BOP and receiving a denial from the Warden.

Nonetheless, the defendant's motion fails on the merits.  First, his COVID-19-related concerns do not constitute "extraordinary and compelling reasons" under the compassionate release statute.  Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement."[1] U.S.S.G.  § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons."  First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical

---

[1]  The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover.  U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G.  § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement 5050.50.[2]  This program statement was amended effective January 17, 2019, following the First Step Act's passage.  It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.

The defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction. But that is not

_____

[2] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf .

true. The First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

As before, Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, Section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." And finally, as stated, Section 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

The defendant suggests that the resulting guideline is only advisory, but that is not true of this guideline. This policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.

This issue was resolved by *Dillon v. United States*, 560 U.S. 817 (2010), which makes clear that the statutory requirement in Section 3582, that a court heed the restrictions stated by the Sentencing Commission, is binding. *Dillon* concerned a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2). That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—language identical to that which appears in Section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). The Supreme Court in *Dillon* held that the Commission's pertinent policy statement concerning retroactive guideline amendments (U.S.S.G. § 1B1.10) is binding, particularly its directive that a permissible sentence reduction is limited to the bottom of the revised guideline range, without application of the rule of *Booker. See Dillon*, 560 U.S. at 826.

Every consideration identified in *Dillon* appears here. A motion for compassionate release rests on an act of Congressional lenity. It appears under the same prefatory language of Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that"), and explicitly refers to an action to "reduce" a sentence. It applies only to a limited class of prisoners, and does not warrant a full resentencing procedure. There is no basis for any conclusion other than that the statutory language is binding: a court may reduce a sentence based on "extraordinary and compelling reasons" only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Thus, the defendant's position, that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, simply ignores the text of the actual statutes, not to mention the *Dillon* decision.  This Court should reject it.

In the light of these legal standards, the defendant is not eligible for compassionate release on two alternative grounds:

### A.  The defendant has not identified "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

In his motion, the defendant asserts he is entitled to compassionate release because he suffers from high blood pressure and a mild form of chronic breathing problems. First, the defendant has not provided any documentation of his asserted medical conditions and therefore cannot meet his burden of establishing an entitlement to a sentence reduction.  His motion may be denied on that ground alone. *See United States v. Clark*, 2020 WL 1557397, *4 (M.D. La. Apr. 1, 2020) (recognizing that "[g]enerally, the defendant has the burden to show circumstances meeting the test for compassionate release"); *see also, United States v. Aguila*, 2020 WL 1812159, at *2 (E.D. Cal. Apr. 9, 2020) ("Although Defendant claims he has high blood pressure, high cholesterol, sleep apnea, and diabetes, Defendant fails to provide evidence to verify these claims."); *United States v. Lotts*, 2020 WL 835298 (D.N.M. Feb. 20, 2020) (denying the motion where the defendant did not provide the court with any evidence substantiating his purported conditions or their severity).  As stated above, the defendant has submitted not a single medical record or other evidence in support of his alleged medical conditions.

8

Regardless, none of the asserted medical conditions— high blood pressure and a mild form of chronic breathing problems--falls within one of the categories specified in the policy statement's application note. Nor does the defendant's asserted condition rise to the level of severity required under the policy statement. Finally, the defendant's condition is not one of those identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.[3]   Neither high blood pressure nor a mild form of chronic breathing problems is identified by the CDC as definitely increasing the risk for developing serious illness from COVID-19.   Only hypertension is identified as a condition that might increase that risk. As noted in the presentence report, though he has hypertension, he takes medication to address the issue. *See PSR ¶ 54.*

   The defendant also asserts he is entitled to compassionate release because members of his family have medical conditions similar to his.   First, under the binding policy statement, family circumstances only qualify as "extraordinary and compelling reasons" if they concern the death or incapacitation of the caregiver of the defendant's minor child or children, or the incapacitation of the defendant's spouse if he is the only available caregiver.   U.S.S.G. § 1B1.13, cmt. n.(1)(C).   The defendant makes no such allegation, much less any proof of such circumstances.

---

[3] *Centers for Disease Control and Prevention, People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html*

Further, the defendant has not shown that the BOP is incapable of managing any COVID-19 contagion so that release is warranted.  First, the Attorney General has directed that BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors—particularly those at institutions where there have been COVID-19 outbreaks—and BOP is devoting all available resources to executing on that directive.  *See* Attorney General's March 26, 2020, Memorandum[4]; Attorney General's April 3, 2020 Memorandum.[5]

Second, as the Attorney General's April 3, 2020, memorandum reflects, the BOP is modifying its response to the virus on a daily—even hourly—basis. *See Raia*, 954 F.3d at 957 ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

In fact, BOP has been planning for potential COVID-19 transmissions since January 2020, establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, informed by guidance from the World Health Organization.  BOP's Modified Operations Plan to minimize the

---

[4] Available at:  https://www.justice.gov/file/1262731/download

[5] Available at:  https://www.justice.gov/file/1266661/download

10

risk of COVID-19 transmission into and inside its facilities comprises several preventive and mitigation measures, including the following: [6]

- Screening of Inmates and Staff: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission and in medical referral centers, all facility staff will be screened for self-reported risk factors and elevated temperatures.

- Restrictions on Contractor Access: Access to BOP facilities is restricted to only those performing essential services (e.g., medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the BOP Deputy Director. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

- Suspension of Social Visits and Tours: BOP has placed a hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. To ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended.

- Suspension of Legal Visits: BOP has also placed a hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

- Suspension of Inmate Movements: Inmates are secured in their cells/quarters, and only limited group gatherings are permitted in order to provide access to showers, telephone and computer services, laundry, and commissary. With limited exceptions as required for court appearances, medical treatment, halfway house placements, and forensic examinations, BOP has also ceased the movement of inmates and detainees among its facilities, and all inmates who are set to be moved are first being screened for COVID-19 symptoms. This will prevent transmissions between institutional populations. Likewise, all

---

[6] https://www.bop.gov/coronavirus/covid19_status.jsp

11

official staff travel has been cancelled, as has most staff training.

- <u>Modified Operations:</u> The Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.  Among the possible actions are staggering of meal times and recreation time.

At bottom, to classify a fear of contracting COVID-19 on the part of those without CDC-recognized risk factors as an extraordinary and compelling reason supporting compassionate release would not only be inconsistent with the text of the statute and the policy statement, but it would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens; could result in the scattershot treatment of inmates; and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

## B.  **Regardless, the defendant's motion should be denied because he is a danger to the community, and the 18 U.S.C. § 3553(a) factors weigh against release.**

Alternatively, this Court should deny the defendant's motion because he has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *see* U.S.S.G.  § 1B1.13(2), or that release is appropriate in light of the § 3553(a) factors, *see* 18 U.S.C. § 3582(c)(1)(A); *see also*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of compassionate release where the district court properly relied on the fact that an inmate suffering from terminal cancer had a violent criminal history, had

12

committed a violent offense, and had served less than half the sentence imposed); *United States v. Watson,* 2020 WL 1890541, at *3 (N.D. Okla. Apr. 16, 2020) (finding the defendant was not eligible for compassionate release because he poses a danger to the community in light of the offense of conviction (six armed robberies), his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions in prison, which "contradict[ ] his claims that imprisonment has changed him," and the fact that even under current law, he would face a substantial sentence of 42 years on certain firearms charges alone, and he had served only "a small fraction" of the sentence originally imposed by the court).

As noted in the presentence report, the defendant began communicating with a 15 year old minor female on an internet web site. Thereafter, he began further communicating with her using Skype and e-mail. *PSR ¶ 9.* At the time he was communicating with the child, he was aware of her age *PSR ¶ 10.* The defendant sent the child a cell phone so that he could communicate with her secretly. *PSR ¶12.* The defendant requested that the child send sexually explicit images of herself to him and she did on numerous occasions. *PSR ¶ ¶ 17-18.* He then traveled to Louisiana and engaged in sexual intercourse with the child. *PSR ¶ 11.*

When one considers the factors set forth in 18 U.S.C. 3553, the defendant represents a serious danger to the community. His actions were both deliberate and sexually exploitive of a child. He did more than simply communicate with the child, he engaged in sexual acts with that child. He did so in such a way as to reduce the likelihood of being caught, as is evidenced by him sending the child a cell phone to

facilitate their private communication.

Finally, at the time of sentencing, the Court considered all the relevant § 3553(a) factors and determined the defendant deserved a sentence of 97 months (approximately 8 years) —the high end of the 78-97 month guideline range.  PSR, ¶ 69.  The defendant has not yet served 3 years of that 8-year sentence, less than *half of the low end* of the range.  At the very least, he has not even satisfied the mandatory minimum sentence of 5 years prescribed by Congress for those convicted of receiving child pornography.  A reduction of his sentence to time-served would not represent "just punishment," 18 U.S.C. § 3553(a)(2)(A), and it would create disparity with respect to other similarly situated defendants, 18 U.S.C. § 3553(a)(6).

## CONCLUSION

The defendant's motion for compassionate release should be denied on the merits.

Respectfully submitted,

ALEXANDER C. VAN HOOK
ACTING UNITED STATES ATTORNEY


BY:    s/John Luke Walker                    .
JOHN LUKE WALKER
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
Telephone (337) 262-6618

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing has been sent to Inmate Dustin Spears, 52824-074, Federal Correctional Institution, P.O. Box 6001, Ashland, KY 41105 via first class United States mail.

 s/John Luke Walker
JOHN LUKE WALKER
Assistant United States Attorney

15